## GENERAL ELECTRIC CO. v. LEVITON MFG. CO.

### No. 87.

Circuit Court of Appeals, Second Circuit.
March 17, 1941.

Gifford, Scull & Burgess, of New York City (George F. Scull and H. H. Hamilton, both of New York City, of counsel), for defendant-appellant.

Stephen H. Philbin, of Boston, Mass. (Harrison F. Lyman, of Boston, Mass., A. E. Bobst, of Schenectady, N. Y., and Edgar H. Kent, of Boston, Mass., of counsel), for complainant.

Before SWAN, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is a suit for infringement of U. S. Patent No. 1,567,863 to Sargent and De-Reamer (hereafter called the Sargent Patent) which was issued to the complainant on December 29, 1925. We held the same patent valid and infringed as to claims 1 to 8 in General Electric Co. v. United States Electric Mfg. Co., 2 Cir., 63 F.2d 764.

Upon the trial of the case at bar, Judge Campbell held the patent valid and infringed and granted the usual interlocutory decree for an injunction and reference. Prior to his decision a preliminary injunction had been granted in the suit by Judge Inch which we affirmed without opinion, 89 F.2d 1008. The present appeal was taken by the defendant from the interlocutory decree of Judge Campbell. We think that his decision was right and should be affirmed.

The appellant contends that certain patents which were not before us in General Electric Co. v. United States Electric Mfg. Co., 2 Cir., 63 F.2d 764, but are part of the present record, call for a decision different from the one reached in that case both as to the validity of the patent and as to infringement by the defendant. These prior patents which are specially relied on here are U. S. Patents No. 1,275,691 to Hubbell and Nos. 1,395,084 and 1,573,440 to Benjamin.

The patent in suit relates to the mounting in outlet boxes of electric wiring devices such as switches and plug receptacles. The invention consists of an arrangement of plaster-engaging ears on the cross-bar of a switch or plug receptacle. Under the teaching of the patent a workman who installs a switch-box and switch in the wall of a building, instead of attempting to adjust the cross-bar of the switch to any inequalities in level of the wallbox may employ the extended ears of the cross-bar described in the patent. These ears of the cross-bar will rest upon the plaster and align the switch with the surface of the wall. This useful device conveniently and inexpensively secured alignment of a switch with the wall face, rendered unnecessary washers and other levelling mechanisms previously used, and met with a great commercial success.

On the former appeal the attack upon the validity of the patent was principally based on the British Patent No. 102,107 to Mitchell of November 23, 1916. We held that Mitchell's patent did not anticipate Sargent's, or so limit the field of his invention as to deprive it of validity. The Mitchell patent was sufficiently considered on the former appeal and requires no further discussion at this point. The patent to Hubbell (No. 1,275,691) involved no step that affected the validity of the Sargent patent. In our opinion it added nothing of practical importance to the record we had before us in the former litigation. The Sargent patent was issued in spite of the Hubbell patent which was cited before the Patent Office. No one thought enough of the Hubbell invention to offer it as prior art in the former suit, nor was it interposed as a defense in the case at bar until the answer was amended just before trial. It is true that Hubbell, like Mitchell and Sargent, devised a means for aligning switches or plug receptacles in wall boxes but, like Mitchell, in order to achieve his object, he employed broad flanges resting on the surface of the plaster instead of extensions of the cross-bar. These broad flanges involved a separate levelling plate which lay over the cross-bar and extended beyond the sides of the outlet box, but projected sidewise instead of longitudinally of the box. As compared with Sargent's "plaster ears", Hubbell's device required an additional part (namely, the levelling plate) attached to the cross-bar by screws. It called for the use of more metal and involved additional work in installation. While Hubbell may in some respects have partially foreshadowed the kind of structure illustrated in figures 4, 5 and 6 of the Sargent patent his device manifestly lacked the cheapness and simplicity of the plaster-ear cross-bar shown in figures 1 and 2 of the Sargent specification and embodied in the claims of the patent in suit. Hubbell's device never went into use and he paid tribute to the worth of Sargent by being the first to take a license under the latter's patent. There was evidence convincing to the court below that the abandonment of Hubbell's invention for Sargent's was mechanically justified not

only because of the cheapness and convenience of the latter's device, but also because in Hubbell's the screws were necessarily too far from the overlapping flanges of the plate to prevent bending, tipping and faulty alignment of the cross-bar carrying the switch.

The Benjamin patents relate to lighting fixtures and have no pertinency as references to the problem of levelling a switch in a wall-box which was involved in the Sargent invention. The Benjamin devices cut no figure in the present case. They were adequately dealt with by Judge Campbell in his opinion in the court below and require no further notice.

With regard to the question of infringement, the only difference between defendant's infringing device and the United States Electric device held to infringe in the prior litigation is that defendant's plaster-ears are not physically integral with the attachment lugs at the ends of the cross-bar, as in the United States Electric device, but are formed as separate parts which are clamped in the ends of the mechanism surrounding the end lugs of the cross-bar. There is no contention, or possibility of any that there is any change of function resulting from defendant's substitution of one part for two in the levelling ears which it has employed.

We find no difficulty in holding claims 2 to 9 infringed. In claim 2 the words used to define the levelling member are "projecting means carried by the outer ends of said lugs"; in claim 3, "ears formed integral with said members"; in claim 4, "parts carried by said supporting means and extending beyond the confines thereof"; in claim 5, "parts formed integral with said supporting means and extending beyond the confines thereof"; in claim 6, "ears formed integral with said supporting means"; in claim 7, "projecting ears carried by the cross bar at its two ends"; in claim 8, "ears formed integral with it at its ends"; in claim 9, "provided * * * with projecting wall engaging means". The foregoing elements of claims 2 to 9 limit the location of the plaster ears to the ends of the lugs, thereby distinguishing the device from that of Hubbell wherein the projections of the wall engaging plate are remote from the end lugs. In our opinion they cover defendant's device in which the plaster ears are located at the ends of the cross bar. To require the outer ends of the lugs to be formed into plaster ears in order to come within the claims would result in limitations that would render the invention practically worthless. Whether the projections be cut out of the same piece of metal as the cross bar, or be attached to it by rivets, or clamped so closely to its ends as to create lugs and extending ears which are functionally unitary, in either case the device would seem to infringe the above claims.

Claim 1 of the patent in suit is as follows: "1. The combination with a wall, and an outlet box fastened directly in the wall, of an electrical device in the box, means providing lugs at the ends of the device, fastening means in the lugs which attach the latter to the box for supporting the device in the box, and projecting means associated with said lugs and fastening means and adapted to overlie the wall at the edge of the box for holding the electrical device in alignment wth the wall."

The appellant contends that the words "projecting means associated with said lugs", do not cover the defendant's structure. It may be argued in support of this contention that there was no invention in the structure illustrated in figures 4, 5 and 6 of the Sargent patent because each contemplates a rectangular plate which overlaps the plaster on four sides, somewhat resembling in operation the British patent to Mitchell and the patent to Hubbell with its additional levelling plate. But Sargent's alternative structure is far simpler than the cradle with flush-flanges and four sidewalls of the Mitchell patent. The latter did not anticipate Sargent's alternative structure; nor did the Hubbell design anticipate it, for he employed a levelling plate rather than Sargent's cross-bar having plaster ears resting upon the flanged rectangular frame. Both devices of Sargent are covered by claim 1 and the defendant's structure as well. The claim was therefore infringed. It is to be observed, however, that if the alternative device of Sargent, illustrated by figures 4, 5 and 6, which never went into commercial use, required too little ingenuity in view of the prior art to involve invention it can make no difference, for the other claims cover the defendant's structure.

Decree affirmed.